**Tsige Abebaw DEREJE, Respondent,**

v.

**STATE of Minnesota, Appellant.**

No. A11–1147.

Supreme Court of Minnesota.

Oct. 9, 2013.

David W. Merchant, Chief Appellate Public Defender, Benjamin J. Butler, Assistant State Public Defender, Saint Paul, MN, for respondent.

Lori Swanson, Attorney General, Saint Paul, MN; and Michael O. Freeman, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, MN, for appellant.

## OPINION

ANDERSON, Justice.

Respondent Tsige Abebaw Dereje was convicted of criminal sexual conduct in the fifth degree, Minn.Stat. § 609.3451, subd. 1(1) (2012), stemming from an incident in which he groped the victim, S.J., while she was a passenger in his taxi. Dereje and the prosecutor agreed to conduct a trial on stipulated facts pursuant to Minn. R.Crim. P. 26.01, subd. 3, and Dereje waived all trial rights. The parties jointly submitted the complaint and police reports containing both Dereje's and the victim's versions of events to the district court, which found Dereje guilty. On postconviction review, Dereje now argues that he is entitled to a new trial because (1) the procedure used to convict him was not a trial on stipulated facts pursuant to Minn. R.Crim. P. 26.01, subd. 3; and (2) he received ineffective assistance of counsel. Because we conclude that the procedures used to convict him complied with the requirements of Minn. R.Crim. P. 26.01, subd. 2, and that he received effective assistance of counsel, we reverse the decision of the court of appeals and remand to the district court to reinstate Dereje's judgment of conviction and sentence.

On March 30, 2008, Dereje, a cab driver, picked up S.J. from a bus shelter at the intersection of Broadway Avenue and Lyndale Avenue in Minneapolis. S.J. asked Dereje to drive her to St. Paul, and he agreed. He instead drove her to his apartment, got out of the car, and left her in the cab parked outside. After he left, S.J. got out of the cab, found someone to assist her in calling 911, reported that she had been sexually assaulted and was hiding from her attacker, and met police at the scene when they arrived. Shortly thereafter, police found Dereje driving up and down the street in a white van, and S.J. identified him as her attacker. Beyond these facts, the accounts of Dereje and S.J. share little in common.

Dereje claimed that, after buying groceries at a nearby supermarket, he saw S.J. at a bus shelter and pulled his taxi up to her location after she made eye contact with him. S.J. told him that she needed a ride to St. Paul. Dereje agreed, but told her that he would need to stop at his apartment on the way to drop off the groceries with his wife, assuring S.J. that he would not charge her for that portion of the ride. While he was inside his apartment, S.J. disappeared. Thinking she intended to skip out on the fare, Dereje went looking for her in his personal vehicle. He insisted that he had no sexual contact with S.J., and that the condoms found in his pocket were intended for sexual relations with his wife.

S.J.'s account, which was accepted by the district court, was very different. According to S.J., she asked Dereje to give her a ride to downtown Minneapolis so she could take a bus to downtown St. Paul. Once the car was underway, however, Dereje told S.J. that the ride would be free and he would give her $150 if she would spend the night with him. He also kissed her hand and reached into the back seat to rub her vaginal area over her clothes, despite repeated demands that he stop and let her out of the car. S.J. called 911 several times from the back of the cab—which was confirmed by phone records—but had trouble maintaining a connection because her phone's battery kept falling out. After stopping outside his apartment, Dereje told S.J. he was going to get money and his personal minivan, and left her

locked in the back seat of the cab. She was able to escape, contact police, and meet them when they arrived at the scene. The officers observed that S.J. was shaking and crying when they arrived.

On April 1, 2008, Dereje was charged with criminal sexual conduct in the fourth degree under Minn.Stat. § 609.345, subd. 1(c) (2012)—a felony—and criminal sexual conduct in the fifth degree under Minn. Stat. § 609.3451, subd. 1(1), which is a gross misdemeanor. On September 25, 2008, Dereje made a number of calls to S.J., during which he asked her to drop the charges against him and threatened to kill himself if she refused. Shortly thereafter, Dereje was found incompetent to proceed to trial, and was committed. On March 12, 2009, he was deemed competent to stand trial, and the charges against him, including felony witness tampering stemming from his calls to S.J., were reinstated.

At the March 12 hearing, Dereje, with the help of an Amharic interpreter, pleaded guilty to felony witness tampering and also waived his trial rights regarding the sexual conduct charges. The district court accepted his waiver of trial rights for all of the charges. By agreement, the parties submitted the complaint and police reports to the court for a stipulated-facts trial pursuant to Minn. R.Crim. P. 26.01, subd. 3. The court issued an order accepting S.J.'s version of events and finding Dereje guilty of criminal sexual conduct in the fifth degree. The State then dropped the fourth-degree criminal sexual conduct charge.

The district court agreed to stay imposition of the witness-tampering sentence for 3 years, placed Dereje on probation, and prohibited any contact with S.J. It sentenced him to 360 days on the sexual conduct charge, stayed for 2 years, and required him to register as a sex offender.

While the court did not explain the reasoning for its 360–day sentence, Dereje's counsel informed the court prior to sentencing that any sentence of 365 days or more would expose Dereje to deportation, and the record does not suggest any other reason for the court to impose a sentence just short of 1 year.

Although Dereje did not file a direct appeal on either charge, he filed a petition for postconviction relief on January 31, 2011. His petition alleged that (1) the procedure used was not a valid stipulated-facts trial under the Minnesota Rules of Criminal Procedure; (2) he received ineffective assistance of counsel; and (3) his waiver of trial rights was invalid. The district court denied Dereje's petition by order dated May 6, 2011.

Dereje appealed the district court's denial of his petition, again arguing that the procedure used was not a valid trial on stipulated facts and that his counsel was ineffective. However, he did not then, and does not now, contest the validity of his waiver of trial rights. The court of appeals held that a trial based on a body of evidence including disputed facts was not a stipulated-facts trial under Minn. R.Crim. P. 26.01, subd. 3, but that the error was harmless because Dereje's waiver of trial rights converted the proceeding into a valid bench trial based on stipulated evidence. *Dereje v. State*, 812 N.W.2d 205, 209–11 (Minn.App.2012). But, it also held that Dereje received ineffective assistance of counsel because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing, which was structural error. *Id.* at 211. It therefore reversed his conviction for fifth-degree criminal sexual conduct, and remanded for a new trial. *Id.* at 212.

The State now appeals, arguing that there was a valid trial on stipulated facts,

and that Dereje received effective assistance of counsel.

## I.

We first examine whether the district court conducted a valid trial on stipulated facts under Minn. R.Crim. P. 26.01, subd. 3. We conclude that it did not.

The interpretation of the rules of criminal procedure is a question of law that we review de novo. *Ford v. State,* 690 N.W.2d 706, 712 (Minn.2005). "We interpret court rules in accordance with the rules of grammar and give words and phrases their common and approved usage." *State v. Hohenwald,* 815 N.W.2d 823, 829 (Minn.2012). "When considering the plain and ordinary meaning of words or phrases, we have considered dictionary definitions." *State v. Heiges,* 806 N.W.2d 1, 15 (Minn.2011). Additionally, when different words are used in the same context, we assume that the words have different meanings. *See League of Women Voters Minn. v. Ritchie,* 819 N.W.2d 636, 685 n. 29 (Minn.2012) (Anderson, Paul H., J., dissenting). Keeping these principles in mind, we consider the language of Minn. R.Crim. P. 26.01, subd. 3.

Minnesota Rule of Criminal Procedure 26.01, subdivision 3(a), states:

> The defendant and the prosecutor may agree that a determination of defendant's guilt ... may be submitted to and tried by the court based on stipulated facts. Before proceeding, the defendant must acknowledge and personally waive the rights to:
>
> (1) testify at trial;
>
> (2) have the prosecution witnesses testify in open court in the defendant's presence;
>
> (3) question those prosecution witnesses; and

> (4) require any favorable witnesses to testify for the defense in court.

The State argues that Minn. R.Crim. P. 26.01, subd. 3, permits a defendant to stipulate to a body of evidence containing contrary versions of events, and that such a stipulation does not require agreement as to the accuracy of the facts reported, but merely to the fact that the evidence presented *was* reported. This interpretation is not consistent with the plain language of the rule. A "stipulation" is defined as "[a] voluntary agreement between opposing parties concerning some relevant point; esp., an agreement relating to a proceeding, made by attorneys representing adverse parties to the proceeding." *Black's Law Dictionary* 1550 (9th ed.2009). A "fact" is "[s]omething that actually exists; ... [a]n actual or alleged event or circumstance." *Id.* at 669. A stipulated fact is thus agreement between opposing parties regarding the actual event or circumstance. While the parties here agreed on the material to be submitted to the trial court, they did not agree about the actual events that occurred, including, most importantly, whether Dereje touched S.J. inappropriately, or at all.

The State's interpretation is also undermined by subdivision 4 of the Rule, which declares that the "defendant must stipulate to the prosecution's *evidence* in a trial to the court." Minn. R.Crim. P. 26.01, subd. 4(e) (emphasis added). The United States Supreme Court has stated that when a court encounters "certain language in one part of the [rule] and different language in another, the court assumes different meanings were intended." *Sosa v. Alvarez–Machain,* 542 U.S. 692, 711 n. 9, 124 S.Ct. 2739, 159 L.Ed.2d 718 (2004) (internal quotation marks omitted). The use of "evidence" in subdivision 4 and "facts" in subdivision 3 therefore indicates

that the two terms have different meanings.

Our conclusion that the procedure in Dereje's case was not a trial on stipulated facts is further bolstered by our observation that the district court's order contained an explicit, nine-paragraph "Findings of Fact" section. The court did not simply apply the law to the parties' stipulated facts; rather, the findings adopted S.J.'s version of the events and circumstances and, necessarily, rejected Dereje's version. Such material factual determinations are simply antithetical to the plain meaning of a trial on stipulated facts, and are more consistent with what we conclude actually occurred here—a bench trial pursuant to Minn. R.Crim. P. 26.01, subd. 2.[1]

 We hold that the submission of documentary evidence presenting contradictory versions of events cannot constitute a valid trial on stipulated facts under Minn. R.Crim. P. 26.01, subd. 3. But because the trial here met the requirements for a bench trial in Minn. R.Crim. P. 26.01, subd. 2, Dereje validly waived his jury-trial rights, and the district court made detailed and thorough findings of fact drawn from the stipulated evidence, we reject the demand for a new trial, concluding that Dereje's bench trial was not procedurally defective.

## II.

 We next turn to Dereje's claim that he received ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. A postconviction court's conclusion that a defendant received ineffective assistance of counsel involves a mixed question of law and fact that is reviewed de novo. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Opsahl v. State,* 677 N.W.2d 414, 420 (Minn.2004). "Ineffective-assistance-of-counsel claims are generally analyzed as trial errors under *Strickland v. Washington.*" *State v. Dalbec,* 800 N.W.2d 624, 627 (Minn.2011).

To prevail on [a claim under *Strickland* ], an appellant must demonstrate that counsel's performance "fell below an objective standard of reasonableness, and that a reasonable probability exists that the outcome would have been different but for counsel's errors." A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." Thus, we have said that under the prejudice prong, a "defendant must show that counsel's errors 'actually' had an adverse effect in that but for the errors the result of the proceeding probably would have been different." The reviewing court considers the totality of the evidence before the judge or

1. The procedural requirements for a trial without a jury under Minn. R.Crim. P. 26.01, subd. 2, are as follows:

 (a) In a case tried without a jury, the court, within 7 days after the completion of the trial, must make a general finding of guilty; not guilty; or if the applicable pleas have been made, a general finding of not guilty by reason of mental illness or deficiency, double jeopardy, or that Minn.Stat. § 609.035 bars the prosecution.

 (b) The court, within 7 days after making its general finding in felony and gross misdemeanor cases, must in addition make findings in writing of the essential facts.

 (c) In misdemeanor and petty misdemeanor cases, findings must be made within 7 days after the defendant has filed a notice of appeal.

 (d) An opinion or memorandum of decision filed by the court satisfies the requirement to find the essential facts if they appear in the opinion or memorandum.

 (e) If the court omits a finding on any issue of fact essential to sustain the general finding, it must be deemed to have made a finding consistent with the general finding.

jury in making this determination. We need not address both the performance and prejudice prongs if one is determinative.

*State v. Rhodes,* 657 N.W.2d 823, 842 (Minn.2003) (citations omitted) (quoting *State v. Lahue,* 585 N.W.2d 785, 789 (Minn.1998); *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Gates v. State,* 398 N.W.2d 558, 562 (Minn.1987)).

 "Certain counsel-related errors, however, may be structural errors, which do not require a showing of prejudice." *Dalbec,* 800 N.W.2d at 627. "Structural error consists of defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards because [t]he entire conduct of the trial from beginning to end is obviously affected." *Id.* (alteration in the original) (internal quotation marks omitted). A structural error occurs when "counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing" because in such a case "there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *United States v. Cronic,* 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (emphasis added). In other words, a structural error occurs, and the Sixth Amendment guarantee is violated, when the "process loses its character as a confrontation between adversaries." *Id.* at 656–57, 104 S.Ct. 2039. On the other hand, when a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred, and therefore the trial mechanism is not structurally defective. Circumstances calling for a finding of structural error represent "a narrow exception to *Strickland*'s holding that a defendant who asserts ineffective assistance of counsel must demonstrate not only that his attorney's performance was deficient, but also that the deficiency prejudiced the defense." *Florida v. Nixon,* 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004). Because it is presumed " 'that the lawyer is competent to provide the guiding hand that the defendant needs, the burden rests on the accused to demonstrate a constitutional violation.' " *Dalbec,* 800 N.W.2d at 628 (quoting *Cronic,* 466 U.S. at 658, 104 S.Ct. 2039). "Therefore, the burden is on [Dereje] to show that the facts of this case warrant inclusion in the 'narrow exception' to *Strickland.*" *Id.*

Dereje argues that his counsel entirely failed "to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039. We disagree. We have held that the "meaningful adversarial testing" exception set forth in *Cronic* "must involve a 'complete' failure by counsel and does not apply to counsel's failure to oppose the State's case 'at specific points' in the proceeding." *Dalbec,* 800 N.W.2d at 628 (quoting *Bell v. Cone,* 535 U.S. 685, 697, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)). *Bell* involved a defendant who argued that his counsel's failure to make a closing argument at sentencing after the prosecution introduced evidence and gave a closing statement constituted structural error because counsel failed to subject the prosecution's case to meaningful adversarial testing. 535 U.S. at 691–92, 696–97, 122 S.Ct. 1843. The Supreme Court rejected the defendant's claim, reasoning that "[t]he aspects of counsel's performance challenged by [the defendant] ... are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components." *Id.* at 697–98. Similarly, in *Dalbec,* a defendant argued that structural error occurred when his counsel failed to submit a written closing argument after a two-day bench trial. 800 N.W.2d at 626.

We also rejected this claim, reasoning that the circumstances were not meaningfully different from those in *Bell. Id.* at 628–29.

Like those challenged in *Bell* and *Dalbec*, the aspects of counsel's performance challenged by Dereje are plainly of the same ilk as other specific attorney errors we have held subject to *Strickland*'s performance and prejudice components. Additionally, Dereje was not put at a disadvantage by counsel's conduct because, unlike in *Dalbec* and *Bell*, the prosecutor also waived a closing argument.

The court of appeals reasoned that this case could be distinguished from *Dalbec* because "in *Dalbec*, the defendant also received a two-day bench trial, during which trial counsel tested the state's evidence." *Dereje*, 812 N.W.2d at 211. But by ensuring that his client's version of events was included in the documentation presented to the court, Dereje's counsel did challenge the State's case. Dereje's statement contained an alternate version of the events that called into question the statements of S.J. Dereje repeatedly stated that S.J. was not credible and "had made up the entire story," and he presented S.J.'s desire to avoid paying cab fare as a possible motive. The statement also notes evidence consistent with Dereje's version of the events, including the presence of groceries in Dereje's car. Dereje's statement contains sufficient evidence that the district court could have found him not guilty and was, therefore, a meaningful challenge to the State's case.

 And as to the absence of an argument by defense counsel, the format for the presentation of evidence was part of a negotiated plan, which Dereje consented to, whereby Dereje's counsel secured a more favorable sentence for his client. While we acknowledge that the negotiations between the attorneys in this case are not detailed in the record, we note that the State not only agreed to request a stay of Dereje's sentence for felony witness tampering, but also dropped the felony criminal sexual conduct charge.[2] The district court also noted at the sentencing hearing that, as part of the agreement, Dereje would be released immediately after sentencing, something that Dereje had repeatedly stated was a high priority for him because of his desire to reunite with his children. Counsel also timely argued to the court that his client could be subject to deportation if he received a sentence of 365 days or more, and Dereje subsequently received a sentence of 360 days, consistent with counsel's request. Based on this record, we cannot conclude that the defense counsel *entirely* failed to subject the

2. Given that the United States Supreme Court has held that counsel's performance can be ineffective during plea bargaining, *see Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 1408, 182 L.Ed.2d 379 (2012); *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 1388, 182 L.Ed.2d 398 (2012), it must follow that pretrial negotiations and arrangements are meaningful in considering whether counsel's overall performance deprived a defendant of a fair trial. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 ("[T]he purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation, although that is a goal of considerable importance to the legal system. The purpose is simply to ensure that criminal defendants receive a fair trial."). We also note that Dereje knowingly waived his trial rights and agreed to the procedures employed by counsel during his trial. "Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant...." *Id.* at 691, 104 S.Ct. 2052. While it is certainly possible to criticize counsel for his failure to subject S.J. to cross-examination, that choice was Dereje's to make. Counsel's performance does not fall below an objective standard of reasonableness simply because the wisdom of the defendant's choices was debatable.

prosecution's case to meaningful adversarial testing.[3]

For all of these reasons, we conclude that Dereje did not receive ineffective assistance of counsel. Because his bench trial was consistent with the provisions of Minn. R.Crim. P. 26.01, subd. 2, and he received effective assistance of counsel, we reverse the court of appeals and reinstate Dereje's judgment of conviction and sentence.

Reversed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

PAGE, Justice (dissenting).

I respectfully dissent. Although I agree with Justice Wright that Dereje did not receive a stipulated-facts trial and that Dereje's trial counsel was ineffective, I write separately to point out two additional problems with the court's decision in this case.

### I.

It is undisputed on appeal that both Dereje and the State intended that Dereje's guilt be determined using the "Trial on Stipulated Facts" procedure pursuant to Minn. R.Crim. P. 26.01, subd. 3(a) (providing that "[t]he defendant and the prosecutor may agree that a determination of defendant's guilt ... may be submitted to

and tried by the court based on stipulated facts"). But, as the court correctly concludes, the trial procedure Dereje actually received was not a valid stipulated-facts trial because the parties did not agree on the facts and submitted documentary evidence containing conflicting versions of the events underlying the fifth-degree criminal sexual conduct charge. Although the court acknowledges that the trial was procedurally improper under subdivision 3, the court denies Dereje relief on this ground by post-hoc labeling the procedure a proper court trial under Minn. R.Crim. P. 26.01, subd 2.

The problem with the court's analysis is that it ignores the fact that Dereje waived several of his constitutional trial rights in contemplation of receiving a stipulated-facts trial under subdivision 3. Indeed, Minn. R.Crim. P. 26.01, subd. 3, *compels* defendants to waive those rights in order to receive a stipulated-facts trial, stating:

> Before proceeding, the defendant must acknowledge and personally waive the rights to:
>
> (1) testify at trial;
>
> (2) have the prosecution witnesses testify in open court in the defendant's presence;
>
> (3) question those prosecution witnesses; and
>
> (4) require any favorable witnesses to testify for the defense in court.

---

3. Justice Page argues that Dereje's waiver of trial rights was invalid because it was made under the belief that the court would be conducting a subdivision 3 trial on stipulated facts rather than a bench trial under subdivision 2. To grant a new trial on such a basis would be to elevate form over substance. Dereje had the option of a subdivision 2 trial available to him, and he chose to forgo his right to confront and cross-examine witnesses in favor of an agreement in which the State dropped a felony charge and agreed to a favorable sentencing request on his behalf—a sentence ultimately imposed by the district court. No one contests the fact that the State could offer the same inducements in exchange for the same waivers while operating under a correct view of Rule 26.01. The assumption underlying the dissent appears to be that Dereje would refuse such an offer and exercise his trial rights, but there is no need for such speculation—we know Dereje would have accepted that deal because he did, in fact, accept that deal.

Minn. R.Crim. P. 26.01, subd. 3(a). Dereje complied with this requirement by executing a written waiver of his trial rights tracking the language of subdivision 3(a).

In contrast, in order to receive a court trial under subdivision 2, a defendant need only waive his right to a trial by jury. *See* Minn. R.Crim. P. 26.01, subds. 1(2), 2. Under subdivision 2, a defendant is *not* also required to waive his rights to have the prosecution witnesses testify in open court, to confront and question those witnesses, and to require any favorable witnesses to testify for the defense. *Compare* Minn. R.Crim. P. 26.01, subd. 2, *with* Minn. R.Crim. P. 26.01, subd. 3(a). In other words, the rule governing stipulated-facts trials requires the defendant to waive three important trial rights that the rule governing court trials does not require the defendant to waive.

The court assumes, without analysis, that Dereje's waiver of his trial rights— given in contemplation of a stipulated— facts trial under subdivision 3—remained valid even though the type of trial Dereje received was actually a court trial under subdivision 2. I cannot make this assumption. "Waiver 'is an intentional relinquishment of a known right or privilege, and its validity depends . . . upon the particular facts and circumstances surrounding the case.'" *State v. Blom,* 682 N.W.2d 578, 617 (Minn.2004) (alteration in original) (quoting *State v. Richards,* 456 N.W.2d 260, 264 (Minn.1990)). In order for a waiver to be valid, the record must show that the defendant's waiver of a constitutional right was "knowing, intelligent, and voluntary." *State v. Jones,* 772 N.W.2d 496, 504 (Minn. 2009).

Here, I cannot conclude from the present record that Dereje's waiver of his constitutional trial rights was "knowing" or "intelligent" because Dereje waived his rights on the mistaken premise that the

waiver was *required* because he was pursuing a stipulated-facts trial under subdivision 3. *See State v. Rhoads,* 813 N.W.2d 880, 888 (Minn.2012) ("To establish a knowing and intelligent waiver . . . the record must demonstrate among other things that the defendant's waiver is 'made with eyes open.'" (quoting *State v. Camacho,* 561 N.W.2d 160, 173 (Minn.1997))). A defendant's waiver of trial rights cannot be valid when all parties and the court are proceeding on the mistaken assumption that such a waiver is required in order to proceed.

While Dereje's waiver of rights may have been valid with respect to a stipulated-facts trial, the court concludes that is not the procedure he received. Therefore, we must assess the validity of Dereje's waiver of his trial rights against the procedure that was actually employed. When a defendant receives a proper stipulated-facts trial, the rules require him to waive his right to confront the prosecution's witnesses because the underlying facts are not in dispute. *See* Minn. R.Crim. P. 26.01, subd. 3. The defendant and prosecution agree as to the actual events or circumstances underlying the defendant's case and there are no factual issues for the trial court to resolve. But when, as here, the defendant denies the prosecution's allegations against him, and the truth of the prosecution's allegations turns entirely on a credibility determination, the defendant's rights to confront and cross-examine the prosecution's witnesses are critically important because those rights are the principal means by which the underlying factual dispute will be resolved.

It is the exclusive function of the finder of fact to determine the credibility of witnesses. *First Trust Co. of St. Paul v. McLean,* 254 Minn. 75, 78, 93 N.W.2d 517, 519–20 (1958); *accord State v. Reese,* 692 N.W.2d 736, 741 (Minn.2005). We have

long held that "the credibility of a witness depends on his or her 'demeanor, disposition, and character,'" and therefore courts are typically ill-equipped to make witness credibility determinations without having the witnesses testify live and in person. *Bobo v. State*, 820 N.W.2d 511, 517 n. 4 (Minn.2012) (quoting *Albertson v. Albertson*, 243 Minn. 212, 215, 67 N.W.2d 463, 466 (1954)).[1] Likewise, we have recognized that cross-examination is "the principal means by which a defendant may test the credibility of his accuser's testimony." *State v. Myers*, 359 N.W.2d 604, 608 (Minn.1984) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). Thus, without in-person testimony from the defendant's accuser, the defendant has few means to test the veracity of the allegations against him.

Because a defendant's right to confront and cross-examine the witnesses against him plays a more critical role in a court trial under subdivision 2 than in a stipulated-facts trial under subdivision 3, a waiver of rights given in contemplation of a trial under subdivision 3 is not valid for a trial under subdivision 2. And because De-

reje's waiver of rights was not valid outside of the context of a stipulated-facts trial, he is entitled to a new trial on his fifth-degree criminal sexual conduct charge.[2]

## II.

But even if Dereje was not entitled to a new trial for the reasons discussed above, he is nonetheless entitled to a new trial based on his ineffective-assistance-of-counsel claim. The court correctly observes that ineffective-assistance-of-counsel claims are typically analyzed as trial errors under the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Dalbec*, 800 N.W.2d 624, 627 (Minn.2011). Under that test, a defendant must show both: (1) deficient performance (i.e., that trial counsel's performance fell below an objective standard of reasonableness); and (2) prejudice (i.e., that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different). *See Strickland*, 466 U.S. at 687, 104 S.Ct. 2052; *Patterson v. State*, 670 N.W.2d 439, 442 (Minn.2003). "Certain counsel-

---

1. *Accord Opsahl v. State*, 677 N.W.2d 414, 423–24 (Minn.2004) (postconviction court erred by concluding that witnesses were unreliable without first evaluating the credibility of the witnesses at an evidentiary hearing); *Kornberg v. Kornberg*, 542 N.W.2d 379, 385 (Minn.1996) (" '[W]here witnesses give their testimony in the presence and hearing of the trial judge he thereby is better able to determine the worth and weight of the testimony than one who has not seen or heard the witnesses on the stand.' " (quoting *Great N. Ry. Co. v. Becher–Barrett–Lockerby Co.*, 200 Minn. 258, 261, 274 N.W. 522, 523 (1937))); *Stiff v. Associated Sewing Supply Co.*, 436 N.W.2d 777, 779 (Minn.1989) (noting that the deference given to a trial court's findings of fact "is based on the judge having had the advantage of fully hearing the testimony, observing the demeanor of the witnesses as they testify, and acquiring a thorough familiarity with all of the circumstances of the case");

*State v. King*, 88 Minn. 175, 181, 92 N.W. 965, 968 (1903) (noting that a witness's "appearance, demeanor, and the manner in which he gave his testimony" could inform the jury's judgment as to credibility).

2. The court contends that Dereje "chose to forgo his right to confront and cross-examine witnesses in favor of an agreement in which the State dropped a felony charge and agreed to a favorable sentencing request on his behalf." But this contention is speculative. After careful review of the record, I find no evidence that Dereje's waiver of his trial rights was in consideration of either the State's decision to dismiss the felony criminal sexual conduct charge or the State's sentencing recommendation on the witness tampering charge. Accordingly, the court improperly relies on the existence of an "agreement" or "deal" in order to support its conclusion.

related errors, however, may be structural errors, which do not require a showing of prejudice" because prejudice in such cases is presumed. *Dalbec*, 800 N.W.2d at 627; *accord United States v. Cronic*, 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Stated differently, a finding of structural error relieves the defendant of his usual responsibility of proving that his counsel's errors prejudiced him.

The court concludes that no structural error occurred in this case. For the reasons stated in Justice Wright's dissent, I disagree with the court's conclusion. But even if there was no structural error in this case, the court errs by ending its analysis without analyzing whether Dereje can prove his ineffective-assistance-of-counsel claim by establishing both prongs of the two-part *Strickland* test. Structural error is an *exception* to the general requirement that a defendant who asserts an ineffective-assistance-of-counsel claim must demonstrate prejudice. *Dalbec*, 800 N.W.2d at 627–28 (citing *Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004)). Thus, the court's perceived lack of structural error in this case does not mean that Dereje *cannot* prove prejudice from his counsel's deficient performance; it merely means that such prejudice will not be *presumed*. *See id.* By addressing the issue of structural error only, the court effectively ignores the substance of Dereje's ineffective-assistance-of-counsel claim and deprives him of a meaningful hearing on appeal as to the merits of that claim.

As discussed in Justice Wright's dissent, Dereje can succeed on his ineffective-assistance-of-counsel claim even in the absence of structural error. The outcome of Dereje's trial turned entirely on a credibility determination as to whether S.J. was telling the truth in alleging that Dereje touched her. In light of the uncorroborated nature of the accusation against Dereje, a reasonably competent attorney would have made *some* argument as to why S.J. should not be believed or why there was at least a reasonable doubt as to the veracity of her allegation. But Dereje's counsel failed to advance a single reason why the district court should discredit S.J.'s accusation, request that the district court acquit Dereje, or make any argument on behalf of his client. Therefore, Dereje has met the first element of the *Strickland* test by showing that his counsel's performance fell below an objective standard of reasonableness.

The majority posits that, because Dereje waived his trial rights, he cannot base an ineffective-assistance-of-counsel claim on his counsel's failure to exercise those rights on his behalf. But, as I already explained, Dereje did not validly waive those rights. He waived his rights for a stipulated-facts trial that he did not receive. Thus, Dereje's waiver cannot excuse his trial counsel's failure to meaningfully contest his guilt in the trial that occurred. Instead, counsel's ineffectiveness began when he allowed his client to waive his trial rights in order to receive a nonexistent stipulated-facts trial.

Having reviewed the record, I conclude that, had counsel made such arguments on behalf of his client, there is a reasonable probability that the result would have been different. As Justice Wright points out, there were internal inconsistencies and deficiencies in S.J.'s statement that might have created a reasonable doubt as to Dereje's guilt had they been identified and argued by a competent attorney. Therefore, counsel's failures prejudiced Dereje and he can succeed on his ineffective-assistance-of-counsel claim under the two-part *Strickland* test.

I respectfully dissent.

WRIGHT, Justice (dissenting).

I join in the dissent of Justice Page.

WRIGHT, Justice (dissenting).

I agree with the majority's holding that the trial procedure used did not afford Dereje a proper stipulated facts trial under Minn. R.Crim. P. 26.01, subd. 3. I also agree with the majority's decision not to reverse on this ground because Dereje received, in essence, a bench trial under Minn. R.Crim. P. 26.01, subd. 2. However, because I disagree with the majority's conclusion that Dereje received effective assistance of counsel during this bench trial, I respectfully dissent.

I.

"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *accord* Minn. Const. art. I, § 6. The purpose of the constitutional right to counsel is " 'to assure fairness in the adversary criminal process.' " *United States v. Cronic,* 466 U.S. 648, 656, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (quoting *United States v. Morrison,* 449 U.S. 361, 364, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981)). The premise of our adversarial process is that truth is best discerned when the prosecution's case is zealously contested, scrutinized, and challenged by the defendant. *See id.* at 655–56, 104 S.Ct. 2039. The right to counsel facilitates this process by giving a defendant access to the skills and expertise needed to subject the prosecution's case to "the crucible of meaningful adversarial testing," thereby ensuring just results. *Id.; accord Strickland v. Washington,* 466 U.S. 668, 685–87, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

To prevail on a claim of ineffective assistance of counsel, a defendant generally must demonstrate that (1) his trial counsel's performance fell below an objective standard of reasonableness (the performance prong); and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different (the prejudice prong). *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *Patterson v. State,* 670 N.W.2d 439, 442 (Minn.2003). In certain limited circumstances, however, deficient performance by counsel may rise to the level of "structural error," *State v. Dalbec,* 800 N.W.2d 624, 627 (Minn.2011), by creating circumstances that are so presumptively unfair as to require reversal without applying the *Strickland* test, *see Bell v. Cone,* 535 U.S. 685, 695–96, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). The majority concludes that Dereje cannot show either structural error or ineffective assistance of counsel under the *Strickland* test. Respectfully, I disagree.

A.

Structural errors are " 'defects in the constitution of the trial mechanism' " that affect the entire conduct of a trial, from beginning to end. *Dalbec,* 800 N.W.2d at 627 (quoting *Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Structural error affects the very framework within which the trial proceeds and calls into question the reliability and fairness of the trial. *Id.* By contrast, "trial error" is error that occurs during the presentation of the case and, therefore, may be harmless depending on the circumstances. *Id.* Although errors of counsel are usually reviewed as trial errors under the *Strickland* test, the United States Supreme Court has stated that an error is structural if "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic,* 466 U.S. at 659, 104 S.Ct. 2039. That is precisely what happened here.

In order to convict Dereje of criminal sexual conduct in the fifth degree, the State was required to prove that Dereje engaged in "nonconsensual sexual contact"

by touching S.J. on her genitals. *See* Minn.Stat. § 609.3451, subd. 1(1) (2012). Because Dereje denied that any touching occurred, the State was required to prove the requisite conduct beyond a reasonable doubt. The State's proof of the touching consisted *solely* of S.J.'s statements; thus, the State's case against Dereje turned entirely on a credibility determination. If the fact-finder believed S.J.'s claim that Dereje touched her, then Dereje was guilty of the offense. If the fact-finder did not believe S.J.'s claim, then Dereje was not guilty.

The purpose of the bench trial Dereje received was to "decide where the truth lies" by resolving this single factual dispute. *Washington v. Texas*, 388 U.S. 14, 19, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). But courts have long recognized that the truth-finding function of a trial is only as effective as the adversarial process that underlies it. *See Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *accord Cronic*, 466 U.S. at 655, 104 S.Ct. 2039 ("[T]ruth ... is best discovered by powerful statements on both sides of the question." (alteration in original) (internal quotation marks omitted)); *State v. Jones*, 392 N.W.2d 224, 233 (Minn.1986) (witness credibility is best determined when the witness is tested, such as by cross examination). A defendant's counsel plays an essential role in making the adversarial process function properly and ensuring that the trial produces a just result. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052.

Here, the "trial" that occurred was extraordinary. With the advice of counsel, Dereje waived his right to confront and cross-examine the prosecution's witnesses, his right to call his own witnesses, his right to a jury, and his right to testify. By giving up these rights, he consented to the adjudication of his guilt based on police reports; and the evidence presented at Dereje's "trial" for criminal sexual conduct consisted largely of the unsworn, out-of-court allegations of his accuser. Even if Dereje's waivers were valid,[1] however, one right that he did not waive was the right to have his counsel function as his *advocate*. Indeed, in light of the rights he waived, Dereje's right to effective assistance of an attorney who would advocate on his behalf was all the more critical.

Rather than fulfilling his duty to act as an advocate for Dereje, trial counsel abdicated his role in the adversarial process and failed to subject the prosecution's case to any meaningful testing. Because S.J. did not testify in court under oath, the testimony of the complainant was not subjected to meaningful cross-examination and impeachment. The only means left for Dereje to test the veracity of S.J.'s accusation was through argument, for example, by challenging the credibility of statements attributable to S.J. that appear in police reports. But Dereje's trial counsel did not even do this.[2]

---

1. The district court's only colloquy with Dereje related to his guilty plea on the witness tampering charge. The district court did not conduct a colloquy addressing any waiver of rights on the criminal sexual conduct charge.

2. This is not to criticize Dereje's counsel for his failure to subject S.J. to cross-examination. I agree with the majority that the choice not to confront and cross-examine S.J. was made by Dereje when he waived his confrontation rights. Dereje did not, however, waive his right to have counsel function as his advocate at trial and make *arguments* on his behalf. With cross-examination off the table, the only tool available to Dereje's counsel was to argue to the court why S.J.'s accusation should not be believed and why Dereje should be acquitted. Counsel's failure to do this modicum of advocacy amounted to ineffective assistance.

Trial counsel failed to bring to the factfinder's attention important facts bearing on S.J.'s credibility. For example, S.J. initially "missed a part" of her story to police—namely, the alleged offense conduct—that Dereje touched her. Trial counsel neglected to highlight internal inconsistencies in S.J.'s statements,[3] and he failed to argue that important aspects of S.J.'s account were unclear, lacked detail, or were implausible.[4] Likewise, trial counsel failed to urge the district court to credit Dereje's account in light of his consistent denials of S.J.'s allegations and the police corroboration of aspects of his account, such as the presence of groceries in his cab to be dropped off at home. Despite the weakness of the State's case, Dereje's counsel failed to argue that the totality of the evidence on the alleged touching simply was not enough to satisfy the prosecution's weighty burden of proving guilt beyond a reasonable doubt.

Dereje's attorney uttered not one word of advocacy on behalf of his client. Dereje's counsel failed to urge the district court to acquit Dereje and failed to offer a single reason for doing so. Rather, the only "defense" Dereje's counsel advanced was an agreement with the prosecutor's recitation of the procedure to be employed and the documents to be submitted. What occurred here was not merely an error in counsel's case presentation. Rather, Dereje's counsel " 'fail[ed] to function in any meaningful sense as the Government's adversary.' " *Florida v. Nixon*, 543 U.S. 175, 190, 125 S.Ct. 551, 160 L.Ed.2d 565 (2004) (quoting *Cronic*, 466 U.S. at 666, 104 S.Ct. 2039). This abject failure of representation affected the trial in its entirety and undermines any confidence in the result. *Dalbec*, 800 N.W.2d at 627.

Despite this abject failure, the majority rejects the existence of structural error, analogizing this case to *Bell* and *Dalbec*. In *Bell*, the Supreme Court rejected a defendant's argument that structural error occurred at his death penalty hearing when his attorney failed to present certain mitigating evidence and waived closing argument. *See* 535 U.S. at 696–97, 122 S.Ct. 1843. In *Dalbec*, we relied on *Bell* to reject a defendant's argument that structural error occurred when his counsel inexplicably failed to submit a written closing argument. *See* 800 N.W.2d at 626–28.

*Bell* and *Dalbec* are factually distinguishable from the case before us, howev-

---

3. For example, inconsistencies exist in S.J.'s accounts to police about such matters as (1) whether S.J. asked Dereje to take her to Minneapolis to catch a bus, or to her sister's house in Saint Paul; and (2) where she was sitting in the cab when Dereje allegedly touched her. Additionally, in her second statement to police, S.J. claimed that Dereje threatened to essentially kidnap her by telling her that he was going to drive her to a house he knew in Brooklyn Park, even though that was not her requested destination and she did not want to go there. But in her first statement to police, S.J. did not mention Dereje's alleged plan to take her to Brooklyn Park. Although these inconsistencies do not make S.J.'s testimony inherently incredible, they illustrate that there were ways in which Dereje's counsel could have conducted at least some advocacy on his client's behalf. With-

out a well-founded rationale for doing so, an effective attorney would not forgo arguments on Dereje's behalf that address these inconsistencies. Yet, no such rationale is evident here.

4. S.J.'s account, for example, does not state whether the cab included a partition between the front and back seats. If a partition was present, it is unclear how Dereje could have managed to touch S.J. while he was sitting in the front seat, as S.J. claims. But if no partition separated the front and back seats, then it is unclear why Dereje would leave S.J. in the cab while he left to retrieve his minivan because she would be able to unlock the doors and escape simply by reaching across the front seat.

er, because in those cases the attorneys engaged in advocacy for their clients, whereas here there was none. Both *Bell* and *Dalbec* articulate the principle that structural error occurs only when there is a " 'complete' failure by counsel and does not apply to counsel's failure to oppose the State's case 'at specific points' in the proceeding." *Dalbec*, 800 N.W.2d at 628 (quoting *Bell*, 535 U.S. at 697, 122 S.Ct. 1843). In *Bell*, counsel's failure could not be deemed "complete" because he "put before the jury extensive testimony about what he believed to be the most compelling mitigating evidence," namely the effect of his client's military service in Vietnam and his drug dependency. *Bell*, 535 U.S. at 699, 122 S.Ct. 1843. Also, unlike the circumstances here, *Bell's* counsel made an opening argument in which he asked the jury for mercy, successfully objected to the prosecution's use of certain evidence, and elicited testimony about the defendant's remorse and his award of the Bronze Star medal. *Id.* at 691, 122 S.Ct. 1843. Likewise, the attorney's failure in *Dalbec* was not "complete" because it was merely a single omission at the conclusion of a two-day bench trial. *See* 800 N.W.2d at 626. In contrast to counsel's performance here, counsel in *Bell* and *Dalbec* advocated during the proceedings on behalf of their clients for the result they sought. Here, Dereje's attorney failed to advance any argument or take any action on behalf of his client during the "trial."

The majority contends that "by ensuring that his client's version of events was included in the documentation presented to the court, Dereje's counsel did challenge the State's case." *Supra* at 723. But the record belies this contention. There is no indication that counsel did anything to "ensure" that Dereje's statements to police were included in the documentation submitted to the court. The record establishes only that the *prosecutor*

"pulled together a packet," defense counsel was "familiar with that packet," and defense counsel agreed that the packet "constituted the evidence as set forth in the police reports."

The inclusion of a one-and-one-half-page summary of Dereje's statement to police does not constitute *meaningful* adversarial testing in fulfillment of the constitutional right to counsel. This "statement" was prepared by and recounted from the perspective of the investigating officer and has an adversarial tone akin to a prosecutor's cross-examination. It is littered with the investigator's editorial comments, such as Dereje "gave [a] confusing account" of events, his "explanation did not make sense," and the investigator "did not believe [Dereje's] story." The investigator asked Dereje "why [S.J.] would report being assaulted" by Dereje, and commented that some of Dereje's actions "were not appropriate or logical." Indeed, Dereje's "statement" provides a stark contrast to S.J.'s seven-page statement to the police, which is in her own words and includes neither critical and skeptical questioning nor editorial comments from the interviewer.

The majority also faults the court of appeals decision for failing to consider defense counsel's advocacy outside of trial on Dereje's *other* charges, namely, his fourth-degree criminal sexual conduct charge and witness tampering charge. I fail to see how such consideration is relevant. A criminal defendant has a "Sixth Amendment right to effective assistance of counsel at *every critical stage* of the proceedings." *Burdine v. Johnson*, 262 F.3d 336, 344 (5th Cir.2001) (emphasis added) (citing *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 77 L.Ed. 158 (1932)); *see also Missouri v. Frye*, —— U.S. ——, 132 S.Ct. 1399, 1405, 182 L.Ed.2d 379 (2012). Trial is one such critical stage. If Dereje re-

ceived ineffective assistance at trial on his fifth-degree criminal sexual conduct charge, his constitutional rights have been violated. This is so even if he received effective assistance on his other charges at other critical stages.[5] Applying the majority's reasoning, a lawyer could proverbially "sleep through trial" so long as he was alert and rendering effective assistance during sentencing, or during plea negotiations on other charges. Neither the Minnesota Constitution nor the United States Constitution provides such scant protection to the defendant in a criminal case.

### B.

Even if one accepts the majority's conclusion that counsel's representation is not structural error and we evaluate Dereje's claim under the two-part *Strickland* test, a new trial is warranted. Dereje has carried his burden under the *Strickland* test largely for the same reasons articulated in my structural-error analysis. The performance of Dereje's counsel was constitutionally deficient when he abdicated his role as Dereje's advocate by failing to comment on the evidence, failing to make a single argument on his client's behalf, and then failing to urge the district court to find Dereje not guilty. No "reasonably competent attorney" in Minnesota (or anywhere else) who is exercising customary skills and diligence in a criminal case would subject a client to such omissions under similar circumstances. *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn.2004)

(citation omitted) (internal quotation marks omitted).

Moreover, Dereje has established prejudice here. The State's case against Dereje turns *solely* on a credibility determination based on the conflicting accounts of Dereje and S.J. with respect to the alleged touching. There is no independent verification of the alleged sexual contact. The factfinder had to ascertain the credibility of S.J.'s statements by inferential means, such as internal consistency, plausibility, clarity, and corroboration of other aspects of her story. A defense counsel rendering effective assistance would have addressed the deficiencies in S.J.'s statements. Instead, when considered in light of the record, the complete abdication of defense counsel's duty on behalf of Dereje establishes a "reasonable probability" that the result of this criminal prosecution would have been different had Dereje received the effective assistance of counsel afforded by both the United States Constitution and the Minnesota Constitution. *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

For all of the foregoing reasons, I would affirm the decision of the Minnesota Court of Appeals.

PAGE, Justice (dissenting).

I join in the dissent of Justice Wright.

---

5. The majority cites *Lafler v. Cooper*, —— U.S. ——, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012), to support its reliance on counsel's alleged advocacy at other stages of the proceeding. But *Lafler* actually refutes the majority's argument. In *Lafler*, the Supreme Court rejected the argument that "[a] fair trial wipes clean any deficient performance by defense counsel during plea bargaining." —— U.S. at ——, 132 S.Ct. at 1388. In other words, the Court rejected the very premise that the majority relies on here: that effective assistance at a one critical stage (trial in *Lafler*) could cure ineffective assistance at another critical stage (plea negotiation). Accordingly, the majority's reliance on *Lafler* is misplaced.