*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1728**

State of Minnesota,
Respondent,

vs.

Nazari Vasilich Cam,
Appellant.

**Filed December 14, 2015
Affirmed
Connolly, Judge**

Polk County District Court
File No. 60-CR-14-545

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Gregory A. Widseth, Polk County Attorney, Andrew W. Johnson, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Anders J. Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Johnson, Judge; and

Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**CONNOLLY**, Judge

On appeal from his conviction of felony domestic assault, appellant argues that the district court abused its discretion by denying his request at trial to play, in their entirety, two audio recordings of telephone conversations between him and the victim.  We affirm.

**FACTS**

On December 5, 2013, appellant Nazari Vasilich Cam was serving a local jail sentence for a previous gross misdemeanor DWI conviction.  Appellant spent the day on work release, and then called his wife, S.C., to ask for a ride back to jail.  While on the phone with S.C., appellant yelled at her and accused her of sleeping with her coworkers.  S.C. did not want to give appellant a ride because she feared he would hit her, but agreed to after he said she had no other choice.  According to S.C., while she was driving appellant back to jail he continued to yell at her, squeezed her face several times to the point it impaired her vision, slapped her, and punched her on the right side of her face.  S.C. dropped appellant off at jail and returned home.

The next day, S.C. told her boss what had happened.  Her boss told her to call the police and, after S.C. refused, instructed one of her coworkers to call.  Shortly thereafter, a deputy of the Polk County Sheriff's Office arrived at S.C.'s work and questioned her about what had happened.  S.C. told him that appellant had punched her while she was driving the night before.  The deputy also took photographs of bruising on S.C.'s face.

Respondent State of Minnesota charged appellant with felony domestic assault.  A jury trial was held from May 20-22, 2014.  At trial, appellant's defense theory was that

S.C. was lying about the alleged assault so their church would allow her to divorce appellant. To establish this theory defense counsel cross-examined S.C. regarding her relationship with appellant and desire to end their marriage. S.C. testified that she and appellant are members of the Russian Orthodox Church, which prohibits divorce except in extreme situations. She stated the church was aware of the situation with her and appellant and would permit her to get a divorce because of the abuse. She further testified that she was not happy in her marriage with appellant, that she did not want to be married to him, that having him out of the house was the next best thing to getting a divorce, and responded affirmatively to defense counsel's question "[H]aving him in jail is even better [than having him out of the house], isn't it?" The jury also heard testimony regarding appellant's three prior domestic-assault convictions in which S.C. was the victim.

S.C. also testified that appellant had called her "like twenty times" on the night of the assault and that she had not spoken to him. Appellant sought to introduce phone records and audio recordings of two telephone conversations between him and S.C. to impeach this testimony. The phone records, which indicated appellant had only called S.C. four times on the night of the assault, were admitted to impeach S.C.'s testimony that he had called 20 times. The records also indicated that of the four phone calls, only two resulted in completed conversations. Appellant moved to admit the audio recordings of the two conversations for two reasons. First, the audio recordings demonstrated that, contrary to S.C.'s testimony, she had spoken to appellant on the night of the assault. Second, the audio recordings reflected "a completely different demeanor of [S.C.]" that

3

was more aggressive and confrontational than her "cowering demeanor she presented in front of the jury."

Respondent objected to the admission of the audio recordings. Respondent argued that it had not received any disclosure related to the audio recordings and could not adequately prepare for cross-examination because the majority of the recordings are in Russian, and the recordings had not been translated. The district court denied appellant's motion to play the audio recordings in their entirety, but permitted appellant to play a portion of the recordings for the limited purpose of impeaching S.C.'s testimony that she did not speak with appellant after dropping him off on the night of the assault.

The jury found appellant guilty. Appellant moved for a new trial based on the district court's denial of his request to play the audio recordings in their entirety. Appellant argued the audio recordings should have been played to allow him to "impeach [S.C.'s] mousey affect and body language on the witness stand." The district court denied the motion. This appeal follows.

## D E C I S I O N

Appellant's sole argument on appeal is that the district court erred by denying his request to play the two audio recordings in their entirety. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted).

Appellant argues that the audio recordings should have been admitted in their entirety to challenge the credibility of S.C.'s testimony. However, appellant does not cite any cases to support his contention that the recordings are proper impeachment evidence. Indeed, there do not appear to be any cases concerning an attempt to use an audio recording to impeach a witness's demeanor on the stand. It is true that the credibility of a witness depends on her "demeanor, disposition, and character." *Dereje v. State*, 837 N.W.2d 714, 726 (Minn. 2013) (quotation omitted). However, "[c]ross-examination is recognized as the principal means by which a defendant may test the credibility of his accuser's testimony." *State v. Myers*, 359 N.W.2d 604, 608 (Minn. 1984). Appellant had the opportunity to cross-examine S.C., and elicited testimony that supported his defense that S.C. lied about the assault because she wanted their church to allow her to divorce appellant. She admitted that she was unhappy in her marriage, that she did not want to be married to him, that the church would only allow her to divorce appellant under extreme circumstances such as abuse, and that she preferred having appellant out of the house or in jail. Thus, appellant was able to use cross-examination to establish S.C.'s possible motivation for lying about the assault.

Appellant argues that the district court's decision not to play the audio recordings in their entirety prevented him from establishing his defense. In presenting a defense, the accused "must comply with established rules of procedure and evidence." *State v. Richards*, 495 N.W.2d 187, 195 (Minn. 1992) (quotation omitted). There are several rules of evidence that relate to impeaching witnesses. Minn. R. Evid. 404(a)(3) provides that evidence of a witness's character is inadmissible except as allowed by rules 607, 608,

5

and 609. Minn. R. Evid. 607 indicates that the credibility of a witness may be attacked by any party. Minn. R. Evid. 608 states a witness may be impeached by opinion or reputation evidence relating to the witness's character and specific instances of conduct that attack or support the witness's character for truthfulness. Minn. R. Evid. 609 allows a witness to be impeached by evidence of a prior conviction of certain crimes. Minn. R. Evid. 613 states that evidence of prior inconsistent statements made by the witness may be admissible. Finally, "evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." Minn. R. Evid. 616.

Appellant argues that the recordings should have been admitted to "challenge the truthfulness of S.C.'s testimony." Thus, it appears appellant is claiming that the recordings reflect prior conduct that is probative of S.C.'s character for truthfulness, which may be inquired into as provided by Minn. R. Evid. 608(b). It is difficult to see how allowing the jury to listen to the audio recordings would be probative of S.C.'s character for truthfulness when the recordings are primarily in Russian and untranslated, and there are no allegations that the substance of what was said conflicts with S.C.'s trial testimony. Rather, appellant focuses on the differences between S.C.'s tone of voice in the recordings and her demeanor on the witness stand. While it is true that S.C. testified that she was afraid of appellant, she also testified that she was tired of him accusing her of cheating on him and felt safer when he was in jail. She further testified that part of the reason she is afraid of him is because, if she yells at him, he responds by hitting her. Based on this testimony it is not surprising that S.C. would speak in a more stern tone while appellant was in jail and there was no immediate threat of retaliation, and does not

6

support the conclusion that the difference in her tone of voice is evidence that she was lying about the abuse. Further, specific instances of conduct by a witness may not be proved by extrinsic evidence. Minn. R. Evid. 608(b). Because the recordings are not proper impeachment evidence, the district court did not abuse its discretion by refusing to play the recordings in their entirety.

Moreover, appellant bears the burden of establishing that he was prejudiced by any error. *Amos*, 658 N.W.2d at 203. A new trial is required if there is a reasonable possibility that the verdict might have been different had the error not occurred. *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994). "If no constitutional right was implicated, we will reverse only if the district court's error substantially influence[d] the jury's decision." *State v. Vang*, 774 N.W.2d 566, 576 (Minn. 2009) (alteration in original) (quotation omitted). Any error in this case did not substantially influence the jury's decision. The jury heard extensive testimony regarding the assault and relationship history of appellant and S.C.'s marriage. S.C.'s testimony concerning the assault was consistent with the accounts she gave to her supervisor and the deputy the day after the assault occurred. S.C., her supervisor, and the deputy all testified that she had a bruise from the assault, but that the bruise was difficult to see in the photographs. The jury also heard testimony regarding appellant's three prior convictions for domestic assault in which S.C. was the victim. Finally, defense counsel was able to develop S.C.'s possible motive for lying about the assault and successfully impeached her testimony that appellant called her 20 times on the night of the assault and that she had not spoken with him. S.C. openly admitted that she was unhappy and did not want to be married to

7

appellant, and that the church would only allow her to divorce him in an extreme situation such as abuse. Thus, the jury was well aware of S.C.'s possible motivation for lying and rejected it.

The alleged error prevented the jury from hearing S.C.'s tone of voice while she spoke with appellant, who was in jail at the time. The calls were primarily in Russian and not translated, so the jurors would have had no context about what was being discussed. Appellant's argument focuses purely on S.C.'s tone of voice; he does not allege that any specific statement is inconsistent with her trial testimony. Given the information presented, it cannot be said that there is a reasonable possibility that the verdict may have been different but for the alleged error. A reasonable jury would not have reached a different verdict solely based on S.C.'s tone of voice in the audio recordings.

**Affirmed.**