*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1783**

State of Minnesota,
Respondent,

vs.

John Everette Pierce,
Appellant.

**Filed November 23, 2015
Affirmed in part and vacated in part
Schellhas, Judge
Dissenting, Minge, Judge**[*]

St. Louis County District Court
File No. 69HI-CR-13-140

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark S. Rubin, St. Louis County Attorney, Karl G. Sundquist, Assistant County Attorney, Hibbing, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Lydia Villalva Lijó, Assistant Public Defender, St. Paul, Minnesota (for respondent)

        Considered and decided by Reilly, Presiding Judge; Schellhas, Judge; and Minge,

Judge.

---

[*]  Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**SCHELLHAS**, Judge

Appellant seeks reversal of his conviction of first-degree criminal sexual conduct and a new trial, arguing that the district court erred by denying his motion to remove the assigned judge and that "defects" occurred in his trial. Appellant also seeks vacation of a 50-year domestic-abuse no-contact order and a 50-year harassment restraining order, and he raises additional arguments pro se. We affirm in part and vacate in part.

## FACTS

Appellant John Everette Pierce and victim R.S. had a cohabiting romantic relationship that ended in about November 2012. On February 8, 2013, R.S. petitioned for and received a two-year harassment restraining order (HRO) against Pierce, alleging unwanted, distressing contacts in person and through telephone calls and text messages. On March 2, Pierce lured R.S. to a residence that he entered without permission, threatened her with a handgun, forced her into a basement bedroom, and sexually assaulted her. Respondent State of Minnesota charged Pierce with first-degree burglary, two counts of kidnapping, four counts of first-degree criminal sexual conduct, second-degree assault, false imprisonment, felony violation of an HRO, violation of an HRO while possessing a dangerous weapon, felony domestic assault, and terroristic threats.

Pierce moved to dismiss the charges for lack of probable cause and for a change of venue, and he asked the assigned judge to recuse himself. The assigned judge declined to recuse himself and denied Pierce's motions to dismiss and for a change of venue. Pierce

then moved to remove the assigned judge for bias. The chief judge of the district court heard and denied the motion.

At a hearing originally set as a pretrial conference, the parties informed the district court that they had stipulated "to have the case decided by the court," and the prosecutor explained his understanding of the parties' agreement as follows:

> [W]e will be submitting to the court the first count of the complaint, First Degree Crim/Sexual Conduct. It is my understanding that Mr. Pierce will be waiving his right to a jury trial and stipulating and agreeing to—that the matter can be heard on a court trial.
> The stipulation would be as to the evidence in the file, in its entirety, which would include the police reports, any recordings, any medical records, any BCA records, that the court could use to determine and making a finding on the evidence. . . . [I]f the court does determine a finding of guilt due to this agreement, the state would be agreeing to the bottom of the box for a First Degree Crim/Sexual Conduct, which is at 306 months.
> It is my understanding and further, your Honor, that the issues will be preserved or any of the issues that came up at the omnibus setting or the pretrial specifically, the removal issue of your Honor, and then also any other issues that were raised, which I believe were only possibly a venue motion and a probable cause.

Defense counsel agreed with the prosecutor's statements.

The district court asked whether reference to "the entire file" meant "all of the discovery that has been filed to date," and the prosecutor said yes. Defense counsel then questioned Pierce regarding his trial rights. Both parties waived "further summation or final argument based on the evidence," and immediately thereafter the court announced its finding of guilt.

3

The next day, the district court issued detailed written findings, conclusions of law, and an order in which the court adjudged Pierce guilty of first-degree criminal sexual conduct. The court sentenced Pierce to 306 months' imprisonment in accordance with the agreement, issued a 50-year domestic-abuse no-contact order (DANCO) prohibiting Pierce from contacting R.S., and extended R.S.'s unexpired HRO against Pierce for 50 years.

This appeal follows.

## DECISION

### *Judicial removal motion*

"A judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct. A request to disqualify a judge for cause must be heard and determined by the chief judge of the district . . . ." Minn. R. Crim. P. 26.03, subd. 14(3). The Code of Judicial Conduct provides that a judge is disqualified "in any proceeding in which the judge's impartiality might reasonably be questioned," Minn. Code Jud. Conduct Rule 2.11(A), as viewed "from the perspective of a reasonable examiner who is an objective, unbiased layperson with full knowledge of the facts and circumstances," *State v. Pratt*, 813 N.W.2d 868, 876 n.8 (Minn. 2012) (quotations omitted). "The Code defines . . . 'impartiality' as the absence of bias or prejudice in favor of, or against, particular parties or classes of parties, as well as maintenance of an open mind in considering issues that may come before a judge." *Id.* at 876 (quotation omitted).

"[T]he mere fact that a party declares a judge partial does not in itself generate a reasonable question as to the judge's impartiality." *Hooper v. State*, 838 N.W.2d 775, 790

4

(Minn. 2013) (quotation omitted), *cert. denied*, 134 S. Ct. 2147 (2014). And "[t]he prohibition against a judge presiding when his or her impartiality might reasonably be questioned leaves considerable room for interpretation and does not provide a precise formula that can automatically be applied." *Pratt*, 813 N.W.2d at 876 (quotations omitted). Accordingly, "[a] motion to remove [a judge] for cause is committed to the discretion of the trial court and [appellate] court[s] will reverse only for an abuse of that discretion." *Hooper*, 838 N.W.2d at 790 (quotation omitted).

In this case, Pierce argues that the chief judge erred by denying Pierce's motion to remove the assigned judge, claiming that an objective examination of the facts and circumstances would cause a reasonable examiner to question the assigned judge's impartiality. Pierce points to R.S.'s omnibus-hearing testimony that the assigned judge's daughter was a "good friend" of R.S.'s daughter; that R.S. was a Facebook friend of the assigned judge's daughter; and that R.S. made Facebook posts referencing her sexual assault, at least once referencing and depicting Pierce in connection with the assault. Pierce also asserts that partiality is suggested by certain statements of the assigned judge in an affidavit that he submitted in response to Pierce's motion to remove him, particularly references to Pierce's "concern[ing]" calls to court administration, "ulterior motives" for seeking removal, and lengthy criminal history.

But the disqualification standard requires an examination of *all* the facts and circumstances—not just those that might cast a shadow on a judge's impartiality. *See In re Jacobs*, 802 N.W.2d 748, 753 (Minn. 2011) ("Like all legal issues, judges determine appearance of impropriety—not by considering what a straw poll of the only partly

5

informed man-in-the-street would show—but by examining the record facts and the law, and then deciding whether a reasonable person knowing and understanding all the relevant facts would recuse the judge." (quotation omitted)). Here, the assigned judge's affidavit reflects that he did not know Pierce or R.S., that he did not know R.S.'s daughter "other than perhaps to say 'hello'" to her as a friend of his own daughter, that his daughter was a college student and not a member of his household, and that he did not discuss Pierce's case with his daughter. The assigned judge also disclaimed "having any personal reason to want to continue to preside [over Pierce's case]" and recounted his duty to "discharge the judge's oath of office in a diligent and impartial manner." And Pierce produced no evidence to suggest that either the assigned judge or his daughter had seen R.S.'s Facebook posts regarding her sexual assault or otherwise had interacted with R.S. or her daughter regarding the assault.

The chief judge correctly noted that the Minnesota Code of Judicial Conduct "requires recusal in any proceeding in which the judge's impartiality might reasonably be questioned" and acknowledged an attenuated connection between the assigned judge and R.S.—through their respective daughters—before concluding that the connection was not "sufficient . . . to create any reasonable question of impartiality." The chief judge therefore acted well within the district court's discretion by denying Pierce's motion to remove the assigned judge. *Cf. Jacobs*, 802 N.W.2d at 750, 754 (noting that "[a]n examination of the facts and circumstances must . . . take into account the expectation that judges will not allow familial relationships and other interests to affect their decision-making" and rejecting defendant's argument that judge's "spouse's role as an

6

assistant county attorney in the county prosecuting [defendant's] case created an appearance of partiality").

***Alleged trial defects***

"Generally, there are two types of error: structural error and trial error." *Colbert v. State*, ___ N.W.2d ___, ___, 2015 WL 6160681, at *6 (Minn. Oct. 21, 2015). "On the one hand, structural errors are defects in the constitution of the trial mechanism" that "affect the entire trial from beginning to end and undermine the structural integrity of the criminal tribunal itself." *Id.* (quotations omitted). Structural errors "defy analysis by 'harmless-error' standards" and therefore "require automatic reversal of a conviction." *State v. Kuhlmann*, 806 N.W.2d 844, 851 (Minn. 2011) (quotation omitted). A trial error, on the other hand, "may be quantitatively assessed in the context of the other evidence presented in order to determine whether it was harmless beyond a reasonable doubt." *Colbert*, 2015 WL 6160681, at *6 (quotation omitted). "Most errors are trial errors, which are reviewed under a prejudicial-impact analysis to determine whether they require reversal and a new trial." *State v. Watkins*, 840 N.W.2d 21, 25–26 (Minn. 2013). "Structural errors resulting in automatic reversal occur only in a very limited class of cases." *Colbert*, 2015 WL 6160681, at *6 (quotation omitted).

Here, Pierce points to "defects" in his court trial, arguing that his conviction must be reversed because it resulted from a proceeding that failed to comply with the waiver requirements of Minn. R. Crim. P. 26.01, and because the district court committed structural error by depriving him of his rights to an adversarial proceeding and to an impartial judge.

7

*Rule 26.01*

In a written order following its oral finding of Pierce's guilt, the district court stated that

> [b]ecause none of the[] [challenged] pretrial decisions are "dispositive of the case" within the meaning of Minnesota Rules of Criminal Procedure Rule 26.01 subd. 4(a), . . . and . . . this case could not be submitted pursuant to Rule 26.01 subd. 3 as a trial on stipulated facts, the parties herein, at this court's direction, fashioned the terms of their agreement pursuant to Rule 26.01 subd. 2, not as a stipulation to facts, but as a stipulation to the evidentiary record from which this court, in a bench trial, would make its Findings of Fact to support its verdict. This court's intent is to be consistent with the recent decision of *Dereje v. State*, 837 N.W.2d 714 (Minn. 2013). See also *State v. Gerber*, unpublished decision of the Minnesota Court of Appeals, A12-0350, filed March 17, 2014.

To receive a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3, or a stipulated-evidence proceeding under Minn. R. Crim. P. 26.01, subd. 4—formerly known as a *Lothenbach* proceeding, *see State v. Antrim*, 764 N.W.2d 67, 69 (Minn. App. 2009)—a defendant must "waive a jury trial on the issue of guilt . . . personally, in writing or on the record in open court, after being advised by the court of the right to trial by jury, and after having had an opportunity to consult with counsel." *See* Minn. R. Crim. P. 26.01, subds. 1(2)(a), 3(a), 4(d). Furthermore, "the defendant must acknowledge and personally waive the rights to: (1) testify at trial; (2) have the prosecution witnesses testify in open court in the defendant's presence; (3) question those prosecution witnesses; and (4) require any favorable witnesses to testify for the defense in court." Minn. R. Crim. P. 26.01, subds. 3(a), 4(d).

8

In this case, the record reveals the following trial-rights waiver colloquy:

> DEFENSE COUNSEL: [W]e've talked numerous times about your case, the facts of your case and everything, and we are actually here today for a jury trial, correct?
> PIERCE: Correct.
> DEFENSE COUNSEL: And we've talked—kind of talking the last couple of weeks about possible resolution to this matter and today we talked about essentially submitting the evidence to the court, so the court—as [the assigned judge] would be the—he would be sole decider of guilt or innocence in this case, correct?
> PIERCE: Correct.
> DEFENSE COUNSEL: When we do that, and also by stipulating to the evidence, you understand today that there is going to be no witnesses or the next week that there is going to be no witnesses up there testifying against you, correct?
> PIERCE: Right.
> DEFENSE COUNSEL: So we are waiving our right to cross examine them?
> PIERCE: Correct.
> DEFENSE COUNSEL: So in total you understand that you are waiving your right to have twelve jurors decide your case, correct?
> PIERCE: Correct.
> DEFENSE COUNSEL: Giving up your right to confront and cross examine witnesses, correct?
> PIERCE: Correct.
> DEFENSE COUNSEL: Giving up your right to testify or remain silent in your case, correct?
> PIERCE: Right.
> DEFENSE COUNSEL: I believe that would be all of [sic] waivers, your Honor.

Pierce did not acknowledge and personally waive his right to "require any favorable witnesses to testify for the defense in court." *See* Minn. R. Crim. P. 26.01, subd. 3(a)(4).

The state argues that a defendant is not required to acknowledge and personally waive his trial rights in order to receive a trial that is based on a stipulated body of documentary evidence and that does not involve the defendant's exercise of any of his

9

trial rights. The state correctly notes that, by its terms, rule 26.01 requires a defendant to waive his trial rights in order to receive a stipulated-facts trial under subdivision 3 or a stipulated-evidence proceeding under subdivision 4 but does not require the defendant to waive his trial rights in order to receive a court trial under subdivision 2. According to the state, compliance with the basic procedural requirements for a court trial—i.e., the defendant's waiver of the right to a jury trial and the district court's issuance of findings, as required by subdivision 2—results in a valid court trial on stipulated evidence.

Indeed, in *Dereje*, the supreme court affirmed a conviction resulting from a proceeding in which the parties submitted a body of documentary evidence to the district court, presented no testimony, waived closing argument, and awaited the court's finding of guilty or not guilty.[1] *See* 837 N.W.2d at 719, 721, 723. The supreme court held that the proceeding constituted a valid court trial under Minn. R. Crim. P. 26.01, subd. 2, reasoning that "the trial . . . met the requirements for a bench trial in Minn. R.Crim. P. 26.01, subd. 2, Dereje validly waived his jury-trial rights, and the district court made detailed and thorough findings of fact drawn from the stipulated evidence." *Id.* at 721. But *Dereje* does not answer the question before us, because—unlike Pierce—Dereje acknowledged and personally waived all of his trial rights and did not contest the validity of those waivers on appeal. *See id.* at 718–19, 721.

---

[1] The parties in *Dereje* characterized the proceeding as a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 3. 837 N.W.2d at 719. The supreme court rejected that characterization, holding that "the submission of documentary evidence presenting contradictory versions of events cannot constitute a valid trial on stipulated facts under Minn. R. Crim. P. 26.01, subd. 3." *Id.* at 721.

"[T]his court has repeatedly stated that the waiver requirements of [Minn. R. Crim. P.] 26.01 are strictly construed." *State v. Ehmke*, 752 N.W.2d 117, 122, 123 (Minn. App. 2008) (reversing conviction that resulted from stipulated-evidence proceeding under subdivision 4, in absence of represented defendant's valid waiver of right to testify, without discussing prejudicial impact of faulty waiver); *see Antrim*, 764 N.W.2d at 69–71 (reversing conviction that resulted from stipulated-evidence proceeding under Minn. R. Crim. P. 26.01, subd. 4, in absence of represented defendant's valid waiver of right to require favorable witnesses to testify for defense, without discussing prejudicial impact of faulty waiver); *State v. Knoll*, 739 N.W.2d 919, 920–22 (Minn. App. 2007) (reversing conviction that resulted from *Lothenbach* proceeding, in absence of represented defendant's valid waiver of rights to testify, confront witnesses against him, and subpoena favorable witnesses, without discussing prejudicial impact of faulty waiver); *State v. Halseth*, 653 N.W.2d 782, 784–87 (Minn. App. 2002) (reversing conviction that resulted from stipulated-facts trial, in absence of represented defendant's valid waiver of rights to testify, confront witnesses, and compel production of witnesses, without discussing prejudicial impact of faulty waiver).

But a recent supreme court case casts doubt on this court's line of cases automatically reversing convictions because of faulty trial-rights waivers. In *State v. Little*, the supreme court considered "whether a defendant who has waived his right to a jury trial must renew that waiver when the State subsequently amends the complaint to add a new charge." 851 N.W.2d 878, 880 (Minn. 2014). After conducting a plain-error analysis, the court concluded that the failure to obtain Little's renewed waiver of a jury

trial on the issue of guilt after the state amended the complaint to add a new charge constituted plain error that affected Little's substantial right, and the court reversed the conviction "to ensure fairness and the integrity of the judicial proceedings." *Id.* at 883, 886–87 (quotation omitted).

Although *Little* addresses waiver of the right to a jury trial on the issue of guilt, rather than waiver of the right to require any favorable witnesses to testify for the defense in court, it provides critical guidance on the appropriate standard of review regarding allegedly faulty waivers required by rule 26.01. In *Little*, the state argued for plain-error analysis because Little failed to object in district court when his jury-trial waiver was not renewed, *id.* at 883–84, and Little argued that plain-error analysis does not apply to the required waiver of a defendant's jury-trial rights, *id.* at 883. The supreme court stated as follows:

> Because we conclude that Little is entitled to a new trial . . . under plain error analysis, we need not resolve the parties' dispute regarding the appropriate review standard. *See Hooper v. State*, 838 N.W.2d 775, 786 n. 1 (Minn. 2013) (explaining that the court did not need to decide whether the harmless error or plain error standard applied because the defendant was entitled to relief under either standard).

*Id.* at 884 (footnote omitted). The court never suggested that a faulty waiver under rule 26.01 results in automatic reversal without regard to prejudicial impact. *See id.*; *cf. U.S. v. Dominguez Benitez*, 542 U.S. 74, 81, 124 S. Ct. 2333, 2339 (2004) ("It is only for certain structural errors undermining the fairness of a criminal proceeding as a whole that even

12

preserved error requires reversal without regard to the mistake's effect on the proceeding."). We therefore review the trial-rights waiver in this case for harmless error.[2]

On review for harmless error, we will not reverse Pierce's conviction unless "'there is a reasonable possibility that the [failure to obtain Pierce's waiver of the right to require any favorable witnesses to testify for the defense in court] may have contributed to the conviction.'" *See State v. Richardson*, 670 N.W.2d 267, 277 (Minn. 2003) (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 827 (1967)). Pierce, who was represented by a private attorney, agreed to a court trial on stipulated evidence in exchange for the state's agreement not to pursue 12 of 13 felony charges and to ask for a "bottom of the box" sentence on any conviction of the one remaining charge. Nothing in the record suggests that Pierce—with his lengthy criminal history—was unaware of his right to subpoena witnesses, did not understand that a court trial on stipulated evidence would not involve the exercise of his right to subpoena witnesses, or would have proceeded to a jury trial or ordinary court trial had his right to subpoena witnesses been discussed during the waiver colloquy. Indeed, Pierce responded affirmatively when he was told that no witnesses would testify at the court trial. Accordingly, any error in the district court's failure to secure Pierce's waiver of his right to subpoena favorable

---

[2] We recognize that the supreme court has not resolved the issue of "the appropriate review standard" for unobjected-to errors in a defendant's rule-26.01 waiver. *See Little*, 851 N.W.2d at 884. We apply the harmless-error standard of review because it is "the less onerous standard" of the two that the court considered in *Little*. *Cf. State v. Hill*, 801 N.W.2d 646, 657–58 (Minn. 2011) (applying harmless-error standard to admission of all disputed testimony, some of which was not objected to, because "applying a bifurcated standard" would be "difficult[]" and "any error by the district court did not affect [defendant]'s substantial rights under either standard").

witnesses to testify for him in court was "harmless beyond a reasonable doubt" and therefore is not grounds for reversal. *See id.*

*Right to an adversarial proceeding*

"A structural error occurs when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing because in such a case there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Dereje*, 837 N.W.2d at 722 (quotations omitted). "Claimed Sixth Amendment violations are subject to de novo review." *State v. Taylor*, 869 N.W.2d 1, 19 (Minn. 2015). Pierce argues that "the purported 'court trial' in [his] case was non-adversarial in nature and therefore inherently unfair." In support of this argument, he notes that "there were no opening arguments and both parties waived closing arguments" and that "[t]he district court was never urged to find [Pierce] not guilty."

But in *Dereje*, in rejecting this court's holding "that Dereje received ineffective assistance of counsel because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing, which was structural error," the supreme court reasoned that "[Dereje]'s version of events was included in the documentation presented to the court" and that "the format for the presentation of evidence was part of a negotiated plan, which Dereje consented to, whereby Dereje's counsel secured a more favorable sentence for his client." 837 N.W.2d at 719, 723–24. The supreme court also stated that "Dereje was not put at a disadvantage by counsel's [waiver of closing argument] because . . . the prosecutor also waived a closing argument." *Id.* at 723.

14

Identically here, Pierce's account of the events of March 2, 2013, appears in the body of evidence submitted to and considered by the district court. Both Pierce and the state waived closing argument. And the negotiated agreement for a paper proceeding allowed Pierce to escape exposure to 12 of 13 felony charges and to secure the state's acquiescence to a "bottom of the box" sentence on any conviction of the sole count submitted to the district court, despite the seriousness of his crime and his lengthy criminal history. Under *Dereje*, Pierce's court trial involved meaningful adversarial testing, and we reject his argument to the contrary.

*Right to an impartial judge*

"Criminal defendants have a constitutional right to be tried before a fair and impartial judge." *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006). "Judges must remain impartial by not prejudging; they must maintain an open mind." *State v. Finch*, 865 N.W.2d 696, 705 (Minn. 2015) (quotation omitted). Thus, a judge's failure to "maint[ain] . . . an open mind in considering issues that may come before [him]" is a failure of impartiality. *See Pratt*, 813 N.W.2d at 876 (quotation omitted). "The presence of a partial judge is [a] structural error." *Finch*, 865 N.W.2d at 703 (quotation omitted). "We review de novo whether a defendant's due-process right to an impartial judge was violated." *State v. Sailee*, 792 N.W.2d 90, 95 (Minn. App. 2010) (citing *State v. Dorsey*, 701 N.W.2d 238, 249 (Minn. 2005)), *review denied* (Minn. Mar. 15, 2011).

Pierce argues that the district court prejudged the merits of his case because "a finding of guilt was a foregone conclusion," as evidenced by the district court judge's immediate announcement of his decision following Pierce's waiver colloquy. Pierce

15

insists that the assigned judge instead should have "paus[ed] to evaluate the large amount of stipulated evidence on disputed facts." But before finding Pierce guilty of first-degree criminal sexual conduct, the court stated that, in preparation for the jury trial which had been scheduled to start the next day, it had

> reviewed the entire file including all of the prior hearings, proceedings, arguments about any pretrial issues, and all of the discovery that has been filed, which includes everything that has been served upon the defense other than some CDs of some pictures and statements that there was a notice filed with court but the actual CDs that would be required to be plugged into a computer to look at what it shows, those are not in the file and the court . . . has not reviewed that.
> However, the court has reviewed all of the rest of the evidence here . . . .

Pierce points to no authority to support his argument that the district court's immediate pronouncement of guilt, following the close of evidence, demonstrated the court's prejudgment. Absent such legal authority and because the record contains no evidence that reflects the court's prejudgment, we reject Pierce's partiality argument.

*DANCO*

"The legislature has the exclusive authority to define crimes and offenses and the range of the sentences or punishments for their violation." Minn. Stat. § 609.095(a) (2012). "Minnesota courts therefore do not have inherent authority to impose terms or conditions of sentences for criminal acts and must act within the limits of their statutory authority when imposing sentences." *State v. Pugh*, 753 N.W.2d 308, 311 (Minn. App. 2008), *review denied* (Minn. Sept. 23, 2008). "Consequently, a district court may not impose a no-contact order as part of an executed sentence unless the order is expressly

16

authorized by statute." *Id.* "Because courts have authority to correct an illegal sentence at any time under Minn. R. Crim. P. 27.03, subd. 9, a defendant cannot forfeit, or waive by silence, review of an illegal sentence." *Id.*

"A domestic abuse no contact order is an order issued by a court against a defendant in a criminal proceeding . . . for . . . domestic abuse," which includes criminal sexual conduct against a person with whom the defendant resided in the past. Minn. Stat. §§ 518B.01, subd. 2(a), (b), 629.75, subd. 1(a) (2012). "A domestic abuse no contact order may be issued as a pretrial order before final disposition of the underlying criminal case or as a postconviction probationary order." Minn. Stat. § 629.75, subd. 1(b) (2012); *see also State v. Ness*, 834 N.W.2d 177, 182 (Minn. 2013) ("[U]nder subdivision 1(b), a domestic abuse no contact order may *only* be issued as a pretrial or postconviction probationary order." (emphasis added)). The first-degree criminal sexual conduct statute does not provide for the issuance of a DANCO in its penalty provision. *See* Minn. Stat. § 609.342, subd. 2 (2012).

In this case, on July 18, 2014, immediately after the district court sentenced Pierce to 306 months' imprisonment on his conviction of first-degree criminal sexual conduct, the court issued a 50-year DANCO prohibiting Pierce from contacting R.S. Pierce characterizes the DANCO as an unauthorized "part of [his] executed prison sentence," and the state does not challenge that characterization on appeal. In light of the above authority and the state's tacit concession of error, we vacate the DANCO.

17

***HRO***

"[A district] court may issue a restraining order that . . . orders the respondent to have no contact with another person" if, among other things, "the court finds . . . that there are reasonable grounds to believe that the respondent has engaged in harassment." Minn. Stat. § 609.748, subd. 5 (2012).

> If the court finds that the petitioner has had two or more previous restraining orders in effect against the same respondent or the respondent has violated a prior or existing restraining order on two or more occasions, relief granted by the restraining order may be for a period of up to 50 years.

*Id.*, subd. 5(b). "[T]he issuance of an HRO is reviewed for abuse of discretion." *Peterson v. Johnson*, 755 N.W.2d 758, 761 (Minn. App. 2008).

Here, on July 18, 2014, immediately after sentencing Pierce, the district court extended for 50 years R.S.'s unexpired HRO against Pierce. Pierce argues that the court abused its discretion by extending the HRO because the court failed to "make the findings required to support a 50-year HRO" and because Pierce received inadequate notice that R.S. was seeking an extension of the HRO.

But the record shows the following:

> THE COURT: There is a Harassment Restraining Order that will be in effect until March and today [R.S.] filed for a Domestic Abuse Order for Protection, requesting that duration of that be for 50 years, which under the law would require a further hearing. [Defense counsel], if your client is willing to accept service on the OFP and/or agree to an extension on the Harassment Restraining Order then we don't have to have a further hearing on that. The court will simply order the Restraining Order in each file to continue of a period of 50 years.

18

> DEFENSE COUNSEL: Your Honor, could I have one moment with Mr. Pierce?
> THE COURT: Yes.
> ([Pierce] and [defense counsel] converse.)
> DEFENSE COUNSEL: Your Honor, I have been informed that Mr. Pierce would waive that.
> THE COURT: All right, well . . . by agreement put on the record here today Mr. Pierce is waiving his right to a hearing which otherwise would be scheduled for next week and we will issue a Domestic Abuse No Contact Restraining Order that will take place effective today and will expire on July 18th of the year 2064. . . . The Harassment Order for the record is Hibbing Restraining Order, civil file from last year ending in #117 and it expires 3/8/2015 and under statute that also could be extended for 50 years. Does he have any objection to that?
> (Non-responsive.)
> Nope?
> PIERCE: I don't care—
> THE COURT: All right I will extend both of them for 50 years and that should do it.

Based on this record, we conclude that Pierce waived any challenge to the findings and notice underlying the extension of the HRO. *See State v. Watkins*, 820 N.W.2d 264, 270 (Minn. App. 2012) (holding that defendant waived challenge to issuance of no-contact order where defendant's counsel did not object to issuance of order and instead "affirmatively stated that he had 'no objection' to the issuance of the order"), *aff'd on other grounds*, 840 N.W.2d 21 (Minn. 2013). Accordingly, we do not entertain Pierce's challenge on appeal.

**Pro se arguments**

*Ineffective assistance of counsel*

"To prevail on a claim that his counsel was ineffective, [an] appellant must demonstrate that (1) the attorney's performance fell below an objective standard of

reasonableness; and (2) a reasonable probability exists that, but for the attorney's unprofessional error, the outcome would have been different." *State v. Vang*, 847 N.W.2d 248, 266 (Minn. 2014). "[Appellate courts] need not analyze both prongs if either one is determinative." *Id.*

Pierce argues that he received ineffective assistance of counsel from both a public defender and a private attorney who represented him before the district court. Pierce first claims that the public defender provided deficient representation by failing to utilize certain evidence and make certain arguments at the omnibus hearing at which the court considered Pierce's motion for change of venue. Pierce then claims that the private attorney provided deficient representation by advising Pierce to agree to a court trial on stipulated evidence.

But Pierce fails to allege that prejudice resulted from the purportedly deficient representation. Pierce alleges only that "[h]ad this case been held before a jury trial [sic] it would have been virtually impossible to convict [him]." Pierce does not assert that he would have won his venue motion and proceeded to a jury trial had the public defender utilized more or different evidence or made more or different arguments at the omnibus hearing. Neither does Pierce assert that he would have proceeded to a jury trial absent the advice of the private attorney to agree to a court trial on stipulated evidence. Pierce's total failure to demonstrate that "a reasonable probability exists that, but for the attorney's

20

unprofessional error, the outcome would have been different" defeats his ineffective-assistance claims.[3] *See Vang*, 847 N.W.2d at 266.

Spreigl *evidence*

Evidence of a defendant's prior bad acts "is not admissible to prove the character of [the defendant] in order to show action in conformity therewith," *see* Minn. R. Evid. 404(b), but such evidence may be admissible under other circumstances. For example, evidence of a defendant's prior bad acts may be admissible for non-character purposes such as proving the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See id.*; *see also State v. Spreigl*, 272 Minn. 488, 491–94, 139 N.W.2d 167, 169–72 (1965).

> *Spreigl* evidence can be admitted only if: (1) notice is given that the state intends to use the evidence; (2) the state clearly indicates what the evidence is being offered to prove; (3) the evidence is clear and convincing that the defendant participated in the other offense; (4) the *Spreigl* evidence is relevant and material to the state's case; and (5) the probative value of the *Spreigl* evidence is not outweighed by its potential for unfair prejudice.

*State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015) (quotation omitted).

Pierce argues that the district court improperly "used two cases from [Pierce]'s past . . . to find [him] guilty." The basis of Pierce's argument is difficult to discern, although Pierce may contest the third prong of the test for admissibility of *Spreigl*

---

[3] To any extent Pierce argues that the private attorney's handling of the court trial constituted deficient performance rising to the level of structural error, such argument fails under *Dereje*. *See* 837 N.W.2d at 719, 722–24 (rejecting this court's holding "that Dereje received ineffective assistance of counsel because his trial counsel failed to subject the prosecution's case to meaningful adversarial testing, which was structural error").

evidence—i.e., that the evidence is clear and convincing that he committed the prior bad acts. But whatever the basis of Pierce's *Spreigl* argument, it lacks merit. By stipulating to a body of documentary evidence that contained extensive information about Pierce's prior bad acts, Pierce agreed that the court could consider the evidence and cannot now complain about the court's consideration of two of his prior bad acts. *See State v. Litzau*, 377 N.W.2d 53, 55 (Minn. App. 1985) ("A stipulation as to evidence to be considered at trial is clearly permissible and is binding upon the trial and appellate courts.").

**Affirmed in part and vacated in part.**

**MINGE**, Judge (dissenting)

I respectfully dissent only with respect to the issue of the failure to comply with the waiver requirement. On other issues, I join in the decision.

Our rules of criminal procedure use forceful language with respect to waivers of rights: "[T]he defendant ***MUST*** acknowledge and ***PERSONALLY*** waive [specified] rights . . . ." Minn. R. Crim. P. 26.01, subd. 3(a) (emphasis added). This court has held that the failure to obtain one of the required waivers in a stipulated-evidence proceeding is a structural error. *State v. Halseth*, 653 N.W.2d 782, 786 (Minn. App. 2002); *see also State v. Antrim*, 764 N.W.2d 67, 69-71 (Minn. App. 2009) (strictly construing waiver requirements in rule 26.01); *State v. Ehmke*, 752 N.W.2d 117, 122-23 (Minn. App. 2008) (same); *State v. Knoll*, 739 N.W.2d 919, 920-22 (Minn. App. 2007) (same). In these structural-error situations we have held that reversal is required. *Halseth*, 653 N.W.2d at 786; *Antrim*, 764 N.W.2d at 71; *Ehmke*, 752 N.W.2d at 123; *Knoll*, 739 N.W.2d at 921-22.

We have departed from this strict, structural-error standard and accepted a harmless-error analysis when a waiver is of an objectively ascertainable fact such as age or the criminal record of the accused and when there is no claim of mistake. *State v. Fluker*, 781 N.W.2d 397, 400-03 (Minn. App. 2010). Here, we depart from the structural-error standard and use a harmless-error standard for failure to obtain a basic, required waiver in a stipulated record proceeding, relying on the recent supreme court case of *State v. Little*, 851 N.W.2d 878 (Minn. 2014). That case dealt with jury waivers (a different part of rule 26.01) incident to an added count, proceeded to use the plain-

error standard, and after an exacting application of that standard, reversed a conviction. *Id.* at 880, 883-87. In *Little*, the supreme court's majority opinion never addressed the use of the structural-error standard. The supreme court's approach was essentially that, because the conviction must be reversed under the plain-error standard, there was no need to take up the question of which standard applied.

The right to present evidence, including compelling the presence of witnesses, is a fundamental right. *Burrell v. State*, 858 N.W.2d 779, 786 (Minn. 2015). Without a clear statement from our supreme court, I would not depart from the structural-error standard as historically used by the court of appeals. To do otherwise will effectively condone failure to secure required waivers, create a burdensome review task for this court in applying a subjective standard of review, diminish the protection of the accused in the use of waivers, and dilute the waiver command of "*must*" in the language of the rule. Minn. R. Crim. P. 26.01, subd. 3(a) (emphasis added). I recognize that appellant received the benefit of a plea agreement in this proceeding. However, I note that he still faces over 25 years of incarceration.

I would reverse and remand.